IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| NANCY DANGERFIELD, *Administrator of the Estate of Daniel Behning,*<br><br>    Plaintiff,<br><br>v.<br><br>WEXFORD HEALTH SOURCES INC., ANGELA CRAIN, EVA-JANETTE CANDIDO, STEVE BOWMAN, SH COPPEL, GLEN BABICH, MICHAEL MOLDENHAUER, DR. MYERS, ALISA DEARMOND, and ROB JEFFREYS,<br><br>    Defendants. | Case No. 23-cv-03687-SPM |

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

This matter is before the Court on a Motion to Dismiss for Failure to State a Claim filed by Defendants Wexford Health Sources, Inc., Dearmond, Myers, Babich, Moldenhauer, and Coppel,[1] (Wexford Defendants), and a Motion to Dismiss for Failure to State a Claim filed by Defendants Crain and Jeffreys (IDOC Defendants). (Doc. 24, 48). Plaintiff opposes the motions. (Doc. 36, 46, 52).

---

[1] Defendant Coppel has filed an unopposed motion to adopt the arguments made by the Wexford Defendants in their Motion to Dismiss (Doc. 43, 46). The Motion is **GRANTED** to the extent he seeks to adopt the arguments of the Wexford Defendants.

**ALLEGATIONS IN THE COMPLAINT**

Plaintiff Nancy Dangerfield, Administrator of the Estate of Daniel Behning (Behning), commenced this action on November 14, 2023, pursuant to 42 U.S.C. § 1983 and Illinois state law. (Doc. 1). Plaintiff alleges that on December 24, 2020, while incarcerated at Menard Correctional Center (Menard), Behning was taken to Chester Memorial Hospital with complaints of severe chest pain. Behning was diagnosed with pancytopenia, which has two main origins – nutritional deficiencies and liver disease. On December 31, 2020, Dr. Siddiqui referred Behning to hematology "ASAP." Wexford Health Sources, Inc. (Wexford), the contracted healthcare provider for the Illinois Department of Corrections (IDOC), did not review the referral for several days. In the meant time, Behning's condition worsened, and he was again taken to Chester Memorial Hospital on January 3, 2021.

Wexford approved the hematologist referral on January 4, 2021, and Plaintiff was scheduled to see a hematologist on January 27, 2021. The hematologist, Dr. Tanios, ordered a CT scan to check for cirrhosis of the liver and ordered an appointment with a gastroenterologist. Behning waited for over a month for the CT scan and three months to see a gastroenterologist. Following the CT scan on March 3, 2021, Behning was diagnosed with cirrhosis.

Plaintiff states that cirrhosis is the final stage of chronic liver disease and is always irreversible. The only "hope of surviving cirrhosis is to receive a liver transplant." (Doc. 1, p. 6). Following Behning's diagnosis, Plaintiff asserts that Defendants took no action to have Behning evaluated for a liver transplant, nor did they refer him to a hepatologist or a similar specialist.

Behning's health rapidly deteriorated, and on April 7, 2021, he began vomiting blood and was sent to Chester Memorial Hospital. The treating doctor noted that Behning had been referred to a gastroenterologist but had not seen one. The doctor recorded that "[i]t is important that he see

gastroenterologist as soon as possible." (Doc. 1, p. 6). By April 25, medical staff noted that Behning's speech was slow, and he could not follow commands. He was sent to Southeast Hospital. Upon discharge, the doctor instructed that Behning should follow-up with a hepatologist, gastroenterologist, and hematologist.

Behning saw a gastroenterologist on April 29, 2021, and subsequently underwent multiple colonoscopies, "banding" procedures to address his ongoing esophageal bleeding, and blood transfusions. Behning repeatedly appealed to IDOC and Wexford officials for help obtaining a liver transplant. Plaintiff asserts that in response to his requests, he was falsely told that prisoners were not allowed to receive organ transplants.

On November 20, 2021, eight months after his cirrhosis diagnosis, Behning was taken to St. Louis University Hospital and seen by a hepatologist. The hepatologist, Dr. Desai, concluded that Behning needed a transplant and told Plaintiff that the process should be expedited. A few days after Behning's appointment, Dr. Desai spoke to Angela Crain, the healthcare unit administrator at Menard, about the liver transplant process. Plaintiff claims that Crain told Dr. Desai that it was too late without explaining why.

About a week later, Behning was sent to Chester Memorial Hospital with complaints of extreme abdominal pain. It was recorded that officials from Menard questioned whether Behning could be adequately cared for at the correctional facility. Despite these concerns, Behning returned to Menard, and his health continued to deteriorate. Two days later, Behning was again taken to Chester Memorial Hospital, and then he was transferred to St. Louis University Hospital. Plaintiff remained hospitalized until his death on December 12, 2021.

Plaintiff seeks monetary damages and is proceeding with an Eighth Amendment claim against all Defendants for deliberate indifference to Behning's serious medical needs (Count I); a

civil conspiracy claim against all Defendants under Section 1983 (Count II); an Eighth Amendment claim against all Defendants for failure to intervene (Count III); a state law wrongful death claim against all Defendants (Count IV); a state law survival action against all Defendants (Count V); and *respondeat superior* claim against Defendant Wexford (Count VI). (Doc. 1).

## MOTIONS TO DISMISS

### I.      Legal Standard

The purpose of a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is to decide the adequacy of the complaint. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). The federal system of notice pleading requires only that a plaintiff provide a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). However, the allegations must be "more than labels and conclusions." *Pugh v. Tribune Co.*, 521 F.3d 686, 699 (7th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This requirement is satisfied if the complaint (1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and (2) plausibly suggests that the plaintiff has a right to relief above a speculative level. *Twombly,* 550 U.S. at 555. *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

District courts are required by the Court of Appeals for the Seventh Circuit to review the facts and arguments in Rule 12(b)(6) motions "in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged and drawing all possible inferences in her favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). "The purpose of a motion to dismiss is to test

the sufficiency of the complaint, not to decide the merits." *Gibson,* 910 F.2d at 1520. A complaint "should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Sanders v. Melvin,* 25 F.4th 475, 483 (7th Cir. 2022) (internal quotations and citations omitted).

II.     **Eighth Amendment Claim of Deliberate Indifference (Count I)**

When asserting a deliberate indifference claim, a plaintiff must put forward allegations implicating both an objective and subjective element, namely that: (1) there was an objectively serious medical need; and (2) the prison official acted with deliberate indifference toward that need. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).

a.  **Dearmond, Moldenhauer, Myers, Babich, and Coppel**

In arguing that Plaintiff has failed to state a claim for deliberate indifference, the individual Wexford Defendants point to several factual deficiencies in the Complaint. Wexford Defendants state that there are no facts establishing that: (1) Behning actually qualified for a liver transplant; (2) a physician-patient relationship existed between Behning and the individual Wexford Defendants; (3) the individual Wexford Defendants actually had the authority to refer Behning for a liver transplant; and (4) the individual Wexford Defendants had prior knowledge of Behning's liver issues, previous treatment, or any plans for future treatment. Wexford Defendants also point to their limited interactions with Behning and the fact that Behning received care from specialists and outside providers as demonstrating that they did not act with deliberate indifference towards Behning's serious medical needs.

The Court disagrees with these arguments and finds that Plaintiff has sufficiently stated a claim for deliberate indifference against Dearmond, Moldenhauer, Myers, Babich, and Coppel.

The narrative of the Complaint is that Behning received deficient care for his cirrhosis while at Menard, which ultimately lead to his death. While Behning did eventually receive referrals to various specialists, Plaintiff asserts that these referrals were delayed, and that upon diagnosis, Behning was not timely seen by a hepatologist or "similar specialist who could evaluate and treat [his] serious medical needs." (Doc. 1, p. 6). According to the Complaint, often, Behning's treatment at outside facilities was reactionary in nature, implemented in response to an emergent issue that would arise in his health, as he was not being properly cared for at Menard and his condition continued to deteriorate. Behning also was never evaluated for a liver transplant, which Plaintiff alleges is "the only hope of surviving cirrhosis." Plaintiff pleads that Dearmond, Moldenhauer, Myers, Babich, and Coppel were involved in and responsible for Behning's care and failed to properly treat Behning's condition.

Accepting Plaintiff's allegations as true, Plaintiff has sufficiently stated a claim of deliberate indifference against the individual Wexford Defendants. As the individual Wexford Defendants were members of the medical team within the correctional system and involved in Behning's medical care, it is more than plausible to infer that they knew of Behning's serious condition and the ongoing risks to his health but failed to take meaningful action in treating him. The extent of each individual defendant's involvement in his care, whether each defendant's actions or inactions were reasonable and caused Behning injury, and whether Behning in fact qualified for a liver transplant are disputed issues that will be left to discovery and summary judgment. But for now, Plaintiff has provided enough information to put the individual Wexford Defendants on notice of her claims.

Furthermore, at the pleading stage, the fact that Behning received "some medical care does not automatically defeat a claim of deliberate indifference." *Edwards v. Snyder*, 478 F. 3d 827,

831 (7th Cir. 2007). Neither does Plaintiff's assertion that Dr. Bowman had "singular responsibilities under state regulations and the contract between the IDOC and Wexford to take action for prisoners who required organ transplants to survive," lead the Court to conclude that Plaintiff has failed to state a claim against the Wexford Defendants. Again, whether individual defendants had the authority to refer Plaintiff for further care, including a liver transplant evaluation, or whether they were bound by "administrative issues beyond [their] control" are factual issues to be determined at a later date in the litigation. *Thomas v. Martija,* 991 F. 3d 763, 770 (7th Cir. 2021) (declining to grant summary judgment where the defendant doctor claimed that the outside orthopedist was to blame for delay in care). Accordingly, the Motion to Dismiss filed by the Wexford Defendants is denied as to Count 1 against Dearmond, Myers, Babich, Moldenhauer, and Coppel.

    **b.  Wexford Health Sources, Inc**.

In the Complaint, Plaintiff asserts that Behning's injuries were proximately caused by the policies and practices of Wexford. (Doc. 1, p. 15). Such policies and practices include:

- Healthcare personnel commonly fail to respond or follow up on complaints by prisoners about their health status;
- Healthcare personnel fail to review relevant medical records as a part of a patient's treatment plan;
- Healthcare personnel fail to create a sensible treatment plan for patients whose health status require the creation of a treatment plan;
- Health care personnel fail to schedule follow-up appointments deemed appropriate by members of the medical staff;
- Healthcare personnel fail to take action to secure continuity of care among correctional facilities within the IDOC and other healthcare providers;
- Healthcare personnel are inadequately staffed; and
- Healthcare personnel fail to arrange for prisoners to be referred for specialty evaluation or treatment, even when such a referral is necessary or proper.

(Doc. 1, p. 16). Plaintiff alleges that these policies and practices were allowed to flourish because Wexford (1) encouraged misconduct; (2) failed to provide adequate training and supervision; and (3) failed to punish and discipline prior instances of similar misconduct. Plaintiff states that during a conversation with Eva-Janette Candido, the agency medical coordinator for IDOC, Candido told Plaintiff that prisoners can receive transplants. Candido acknowledged, however, that Wexford's failure to order necessary medical treatments was a serious problem and that Behning needed better care than what was being provided at Menard. (*Id.* at p. 9). Furthermore, the Complaint recounts repeated alleged instances in which Plaintiff received delayed and deficient care and was not referred to the appropriate outside medical providers. These allegations are "sufficient to support an inference that Wexford had a 'widespread practice custom or practice of treating inmates' medical needs with deliberate indifference.'" *Haywood v. Wexford Health Sources, Inc.,* No. 16-cv-6566, 2017 WL 3168996, at *3 (N.D. Ill. July 26, 2017) (quoting *Ford v. Wexford Health Sources, Inc.*, No. 12 C 4558, 2013 WL 474494, at *1-3 (N.D. Ill. Feb. 7, 2013)).

Contrary to Defendants contention, staffing vacancies, failing to create a sensible treatment plan for patients, and other insufficiencies in prisoner care including "repeated examples of negligent acts which disclose a pattern of conduct by the prison medical staff" *can* amount to deliberate indifference.[2] *See Wellman v. Faulkner,* 715 F. 2d 269, 272 (7th Cir. 1983). But again, this cannot be decided at the pleading stage.

Furthermore, whether a constitutional violation was caused by a Wexford expressed or implied widespread policy or by someone with final policymaking authority for Wexford is a legal theory to be developed during discovery. For now, the "question…is simply whether the complaint

---

[2] In support of the argument that Plaintiff has pled merely mistakes that do not plausibly state a claim for deliberate indifference against Wexford, Wexford Defendants cite to only cases decided on the merits during summary judgment or judgment on the merits. (*See* Doc. 24, p. 11).

includes factual allegations that state a plausible claim for relief," against Wexford, which it does. *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015). Count 1 shall proceed against Wexford.

### c. IDOC Defendants – Crain and Jeffreys

Angela Crain, the healthcare unit administrator at Menard, and Rob Jeffreys, the director of IDOC, argue that Plaintiff has not state a claim against them for deliberate indifference as she has failed to allege that they ever provided medical treatment or made any medical decisions regarding Behning's care. Behning was being seen by a variety of medical professionals for treatment at the time Crain spoke to Behning directly and Jeffreys spoke to Behning's uncle via telephone. As non-medical providers, they could not have been deliberately indifferent based on these two isolated conversations.

As Plaintiff asserts, however, an Eighth Amendment claim for deliberate indifference to a serious medical need does not require a plaintiff to establish that the defendant provided medical treatment or made medical decisions to prove liability. (*See* Doc. 52, p. 6). Even where a prisoner is under the care of medical professionals, "nonmedical officials can be chargeable with…deliberate indifference where they have a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." *Arnett v. Webster*, 658 F. 3d 742, 755 (7th Cir. 2011) (internal citations and quotations omitted). Once the nonmedical official is alerted to an excessive risk to a prisoner's health, the "refusal or declination to exercise the authority of his or her office may reflect deliberate disregard." *Id*.

In the Complaint, Plaintiff alleges that Crain and Jeffreys were alerted that Behning was not receiving proper medical care, and they did not take further action to rectify the situation or

intervene on Behning's behalf. This is sufficient to state a claim against both Defendants. *See Perez v. Fenoglio*, 792 F. 3d 768, 781-82 (7th Cir. 2015).

### III. Conspiracy Under Section 1983 (Count II)

Plaintiff has also stated a claim of conspiracy against Defendants Dearmond, Moldenhauer, Dr. Babich, Dr. Myers, Dr. Coppel, Crain, and Jeffreys.[3] A conspiracy claim does not need to be pled with heightened specificity. The Seventh Circuit has established that it is enough to "merely indicate the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with." *Walker v. Thompson,* 288 F. 3d 1005, 1007 (7th Cir. 2002). Plaintiff has met these criteria.

Here, Plaintiff asserts that the individual Defendants reached an agreement (1) to deprive Behning of his constitutional rights by failing to take action to have him evaluated for a liver transplant and/or refer him to the appropriate specialist and (2) to protect one another from liability from the time of his diagnosis until his death. These allegations are coupled with the narrative that Behning and family members, including Plaintiff, repeatedly spoke to Defendants and other staff members about Behning obtaining a liver transplant, and they were falsely informed that prisoners are not allowed to receive organ transplants. (*See* Doc. 1, p. 8). According to Plaintiff, Defendants, who include both medical and administrative staff, were all aware that of Behning's serious conditions, yet no one took steps to have him evaluated for a liver transplant or seen by a hepatologist or other appropriate specialist trained in treating liver diseases until a month before his death. Accordingly, it is plausible to assume that their treatment decisions and actions or lack thereof were coordinated, and that Defendants would have spoken to one another regarding Behning's medical care. Thus, Plaintiff has stated enough for the Court to infer that Defendants

---

[3] Count 2 is dismissed as to Defendant Wexford. Plaintiff concedes that she intends to pursue Count 2 against only the individual Defendants. (Doc. 36, p. 13, n. 7).

worked in concert to deny Behning the opportunity to be evaluated and approved for a liver transplant or receive needed care. *See Geinosky v. City of Chi.*, 675 F. 3d 743, 749 (7th Cir. 2012) ("Under *Twombly*, all plaintiff needed to allege was a plausible account of a conspiracy.").

Finally, the Court will not dismiss the conspiracy claim based on Wexford Defendants' argument that a "conspiracy cannot exist solely between members of the same entity." (Doc. 24, p. 12) (quoting *Nosair v. Fed. Bureau of Prisons*, No. 13-cv-1017-MJR, 2013 WL 5835733, at *4 (S.D. Ill. Oct. 30, 2013)). While the Seventh Circuit has held that the intracorporate conspiracy doctrine applies to conspiracy claims brought pursuant to Sections 1985 and 1986, Defendants do not cite to any case law holding that the rule bars conspiracy claims under Section 1983; nor do they further articulate their argument on this point. *See Greene v. Teslik,* No. 21-2154, 2023 WL 2320767, at *4 (7th Cir. Mar. 2, 2023) (non-precedential opinion) (citing *Wright v. Ill. Dep't of Child. & Fam. Servs.*, 40 F.3d 1492, 1508 (7th Cir. 1994)). *See also Ezell v. City of Chi.,* No. 18 C 1049, 2024 WL 278829, at *29 (N.D. Ill. Jan. 24, 2024) (noting that the Seventh Circuit has not explicitly addressed the applicability of intracorporate conspiracy doctrine to Section 1983 claims) (citations omitted); *Ochoa v. Lopez,* No. 20-cv-02977, 2021 WL 4439426, at *9 (N.D. Ill. Sept. 28, 2021) ("the Seventh Circuit has yet to address whether the intra-corporate conspiracy doctrine applies to Section 1983 cases, and courts in this District are split on whether it does"); *Sassak v. City of Park Ridge,* 431 F. Supp. 2d 810, 821 (N.D. Ill. Mar. 2, 2006) ("[t]he deprivation of civil rights is unlawful and the intra-corporate doctrine only applies when members of a corporation are jointly pursuing the corporation's 'lawful business'"). Thus, the Court declines to dismiss Plaintiff's conspiracy claim based on the intracorporate doctrine.

### IV. Failure to Intervene (Count III)

Defendants argue that Plaintiff has failed to put them on notice of her failure to intervene claim whatsoever by not specifying what constitutional violation was committed and that Defendants had a realistic opportunity to intervene to stop the deprivation. (Doc. 24, p. 14; Doc. 48, p. 5). The arguments are not well taken.

In the Complaint, Plaintiff asserts that "Defendants had reasonably opportunity to prevent the violation of Mr. Behning's constitutional rights as set forth above had they been so inclined, but they failed to do so." (Doc. 1, p. 18). It is clear that by stating "as set forth above" Plaintiff is referencing her Eighth Amendment deliberate indifference claim against Defendants for failing to provide proper medical care or access to medical care as specified in Count 1. As another Court in this district has recognized, "the claims of deliberate indifference and failure to intervene are closely related." *Wiley v. Young,* No. 21-cv-599-JPG, 2022 WL 488144, at *6 (S.D. Ill. Feb. 17, 2022). Whether Defendants either failed to provide adequate medical care to Behning or were aware of the inadequate care being provided by other medical staff and failed to intervene, as Plaintiff asserts, will become evidence "[a]s more facts emerge." *Id.* "A more developed factual record might defeat this claim, but the allegations are sufficient" at the pleading stage. *Piercy v. Whiteside Cty., Ill.,* No. 14 CV 7398, 2016 WL 1719802, at *7 (N.D. Ill. Apr. 29, 2016).

### V. Wrongful Death and Survival Action (Counts IV and V)

Wexford Defendants argue that Plaintiff has not sufficiently pled wrongful death and survival action claims under Illinois state law. Specifically, Plaintiff has failed to (1) show Defendants had a duty to ensure Plaintiff received an organ transplant; (2) plead facts establishing a provider-patient relationship between Behning and Dr. Myers and Dr. Babich; (3) show Defendants breached their duty by failing to provide care within the standard of care considering

their scopes of practice; and (4) show that any action by Defendants caused Behning harm. (Doc. 24, p. 17).

The Wrongful Death Act provides an independent cause of action for damages arising from a decedent's death caused by a wrongful act, neglect, or default. *See* 740 ILL. COMP. STAT. 180/1. Unlike Illinois law, under the federal pleading standards, Plaintiff does not have to plead facts to "satisfy each element of a claim." *Heffman v. Bass,* 467 F. 3d 596, 599 (7th Cir. 2006) (discussing the differences between the pleading requirements under Illinois state law and federal law). *See also*; *Chapman v. Yellow Cab Co.,* 875 F.3d 846, 848 (7th Cir. 2017) ("Ever since their adoption in 1938, the Federal Rules of Civil Procedure have required plaintiffs to plead claims rather than facts corresponding to the elements of a legal theory."). All that is required is "notice." *Wilson v. Ryker*, 451 F. App'x 588, 590 (7th Cir. 2011) ("Notice is what counts"). Again, Plaintiff has met this burden.

The wrongful death claim is based on the alleged deliberate indifference and/or negligent conduct of Defendants for failing to provide Behning "proper medical care or access to medical care." Such conduct included, but was not limited to, not referring Behning for a liver transplant consultation or timely examination by a hepatologist or another specialist. Plaintiff alleges that the individual Wexford Defendants were medical providers within the correctional system who participated in Behning's care and that because of their treatment decisions and conduct Behning suffered pain, emotional distress, and death. (Doc. 1, p. 15). These allegations are sufficient to establish that a duty of care existed between Behning and the individual Wexford Defendants based on a physician-patient relationship and that those individuals breached that duty in willful disregard of his condition, ultimately leading to his death. "[T]he specific standard of care, and whether that standard was breached, is a fact question to be resolved at a later stage." *Sonntag v.*

*Cook Cty., Ill.*, No. 21 C 4935, 2022 WL 704833, at *5 (N.D. Ill. Mar. 9, 2022). Counts 4 and 5 will not be dismissed against Dearmond, Moldenhauer, Myers, Babich, and Coppel.

Likewise, Plaintiff has stated a claim against the IDOC Defendants. Although Plaintiff does not claim that Crain or Jeffreys were medical providers or that either Defendant provided medical care to Behning, again, these are not elements necessary for a wrongful death claim. As prison officials, they had a duty to "exercise ordinary and reasonable care for the preservations of their prisoners' health and life." *Awalt v. Marketti*, No. 11 C 6142, 2012 WL 1161500, at *5 (N.D. Ill. Ap. 9, 2012) (internal quotations and citations omitted). Plaintiff alleges in the Complaint that Crain and Jeffreys breached their duty of care owed to Behning by "ignoring [his] requests for medical attention" and failing to take any action to ensure that his serious medical needs were addressed. (Doc. 1, p. 19-20). These allegations are sufficient to state a claim under Illinois law.

## VI.     *Respondeat Superior* as to Wexford (Count VI)

The Motion to Dismiss is granted as to Count VI. Plaintiff acknowledges that existing law precludes her from bringing a *respondeat superior* claim against Wexford under Section 1983, but she seeks to "preserve[] the right to purse this claim on appeal." *See Peterson v. Wexford Health Sources, Inc.,* 986 F. 3d 746, 754 (7th Cir. 2021) (stating that "[d]espite calls to reconsider our precedent we have chosen to leave *Iskander* undisturbed") (internal citations and quotations omitted). Accordingly, Count VI is dismissed as Plaintiffs' constitutional claims.

The Court also dismisses Count VI as to Plaintiff's allegations of *respondeat superior* liability under Illinois State law. As the Wexford Defendants assert, *respondeat superior* is not a separate claim, but a theory of liability. (Doc. 24, p. 18) (citing *Armbruster v. Wexford Health Sources, Inc.,* 16-cv-544-MRJ, 2017 WL 2619032, at *3 (S.D. Ill. June 16, 2017)). *See also Wilson v. Edward Hosp.,* 981 N.E. 2d 971 (Ill. 2012). The state law of *respondeat superior* is therefore

improperly pled as a separate count and is dismissed. "Nonetheless, Plaintiff may argue *respondeat superior* as a theory of her claims against Wexford under the Illinois Wrongful Death Act and Survival Act, Counts [4 and 5], for the acts and omissions of its employees." *Wiley,* 2022 WL 488144, at *8,

## DISPOSITION

For the reasons stated above, the Motion to Dismiss filed by the Wexford Defendants is **GRANTED in part and DENIED in part**. (Doc. 24). Count 2 is dismissed as to Wexford and Count 6 is dismissed in its entirety. Counts 1, 3, 4, and 5 will proceed as pled against the Wexford Defendants.

The Motion to Adopt and Rule 12(b)(6) Motion to Dismiss filed by Defendant Coppel is **GRANTED in part and DENIED in part.** (Doc. 43). The request to adopt the arguments of the individual Wexford Defendants is granted. The request to dismiss the claims in the Complaint against Coppel is denied.

The Motion to Dismiss filed by the IDOC Defendants is **DENIED.** (Doc. 48).

**IT IS SO ORDERED.**

**DATED:** June 6, 2024

                                                 *s/Stephen P. McGlynn*
                                                 **STEPHEN P. MCGLYNN**
                                                 **U.S. District Judge**